**UNITED STATES OF AMERICA**
**DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER   (DANGEROUSNESS HEARING)** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Raymond Azure, | ) | Case No. 4:03-cr-016 |
| | ) | |
| Defendant. | ) | |

_____

This matter initially came before the Court as the result of the Defendant's Motion for Competency Hearing and Motion for Competency Examination, filed on May 6, 2003, and the United States' Motion for Psychiatric Examination and Report filed on May 13, 2003. On May 14, 2003, the Court granted the Defendant's Motion for Competency Examination and the United States' Motion for Psychiatric Examination and Report. On May 22, 2003, the defendant filed a Motion for Reconsideration requesting that the Court reconsider its Order insofar as it called for the defendant's commitment to a federal facility. Thereafter, on June 6, 2003, the Court ordered the defendant to report to the North Dakota State Hospital for the purpose of conducting a psychiatric and psychological examination to evaluate the defendant's mental condition. A competency and evidentiary hearing was held on August 27, 2003, in Bismarck, North Dakota.

Based on the evidence and testimony of lay witnesses at the competency hearing on August 27, 2003; the testimony of expert witnesses Dr. Robert Gulkin and Dr. Joseph Belanger; and the Competency Evaluation prepared by Dr. Joseph Belanger of the North Dakota State Hospital in Jamestown, North Dakota and filed with the Court on July 23, 2003, the Court found by the preponderance of the evidence that the defendant, Raymond Azure, was not at that time mentally competent to participate in a judicial proceeding to determine the validity of the criminal charges filed

against him; that the defendant was not mentally competent to understand the nature and consequences of the proceedings against him; and that the defendant was presently unable to properly assist in his defense. The expert testimony of Drs. Gulkin and Belanger clearly established that the defendant lacks the competence necessary to stand trial under the standards enumerated in 18 U.S.C. § 4241(d), and that the defendant suffers from a chronic, organic brain syndrome, i.e., dementia. The overwhelming weight of the evidence supported a finding of incompetence to stand trial.

The statutory scheme set forth in 18 U.S.C. § 4241(d) affords the Court the discretion to first determine whether the defendant is competent to stand trial. However, the Eighth Circuit has specifically held that the district court does not have the discretion, prior to a reasonable period of hospitalization in the custody of the Attorney General, to determine whether the defendant will likely attain the capacity to stand trial. United States v. Ferro, 321 F.3d 756, 761 (8th Cir. 2003). Instead, 18 U.S.C. § 4241(d) provides that the Attorney General "shall hospitalize the defendant for treatment in a suitable facility ... as is necessary" to determine whether the defendant's condition will improve to attain the capacity to proceed to trial. Thus, if there is a finding of incompetence to stand trial, there must be a period of hospitalization.

The Eighth Circuit has noted that several other circuits have considered whether 18 U.S.C. 4241(d) requires commitment to the Attorney General for a period of hospitalization upon an initial finding of incompetence. The Eighth Circuit in United States v. Ferro, 321 F.2d at 761, concluded that all circuits which have considered the issue have specifically held that the statute is mandatory. See United States v. Filippi, 211 F.3d 649, 651 (1st Cir. 2000); United States v. Donofrio, 896 F.2d 1301, 1302 (11th Cir., 1990)(holding that the statute is "mandatory"); United States v. Shawar, 865 F.2d 856, 860 (7th Cir. 1989)(concluding that Congress intended mandatory commitment to the Attorney General).

It is clear that after first determining that a defendant is incompetent to stand trial, a district court is required to commit the defendant to the custody of the Attorney General for a reasonable period of time not to exceed four months to determine whether treatment would allow the trial to proceed. 18 U.S.C. § 4241(d)(1). Such steps are required under the current state of the law regardless of whether the defendant's condition is irreversible. The treatment contemplated in 18 U.S.C. § 4241(d) includes hospitalization in order to carefully determine the likelihood of the defendant regaining the mental capacity to stand trial.

In September 2003, the Court remanded the defendant to the custody of the Attorney General to be hospitalized in a suitable facility for a reasonable period of time, not to exceed four months, to determine whether there is a substantial probability that, in the foreseeable future, the defendant will attain the capacity to permit the trial to proceed and will be competent to stand trial. See 18 U.S.C. § 4241(d)(1) and (2). The defendant was evaluated at the Federal Medical Center in Butner, North Carolina. Unfortunately, the defendant was released from FMC-Butner before the receipt of any recommendations for treatment or any assessment of the defendant's dangerousness.

On May 25, 2004, the Court ordered that a "dangerousness assessment" be conducted of the defendant. That assessment took place at the North Dakota State Hospital in Jamestown, North Dakota. In September of 2004, Dr. Joseph Belanger at the North Dakota State Hospital recommended that the defendant be placed in a nursing home. Following the completion of the "dangerousness assessment," the matter was scheduled for a "dangerousness hearing" in accordance with the provisions of 18 U.S.C. § 4246.

Under 18 U.S.C. §§ 4241 and 4246, the Government is entitled to a "dangerousness hearing" before a defendant is released due to incompetency to stand trial. The Government is entitled to present evidence at a "dangerousness hearing" to show that the defendant poses a risk of harm to

3

others and should remain in custody even though there is no potential of attaining the capacity to stand trial.  See United States v. Ferro, 321 F.3d 756, 762 (8th Cir. 2003).  18 U.S.C. § 4246 requires a direct causal nexus between the mental disease or defect and dangerousness.  See United States v. Williams, 299 F.3d 673, 676 (8th Cir. 2002).

According to Eighth Circuit case law, a person may be committed to the custody of the Attorney General under 18 U.S.C. § 4246 if the district court determines that (1) the person presently suffers from a mental disease or defect; (2) the person's release would create a substantial risk of bodily injury to another person or serious damage to the property of another; and (3) no available, suitable state placement exists.  The statute is designed to protect the general public and ensure that mentally ill and dangerous individuals receive appropriate treatment.  See United States v. LeClair, 338 F.3d 882, 884 (8th Cir. 2003).  It is well-established that 18 U.S.C. § 4246(d) requires the Government to prove dangerousness by clear and convincing evidence.  United States v. S.A., 129 F.3d 995, 1000 (8th Cir. 1997); United States v. Evanoff, 10 F.3d 559, 560 (8th Cir. 1993).

In this case, it is undisputed that the Government has a difficult burden to demonstrate that "dangerousness" exists, i.e., that the release of the defendant would create a substantial risk of bodily injury to another person.  The defendant was originally indicted in March of 2003 on one count of aggravated sexual abuse and three counts of abusive sexual contact.  The Government never sought the detention of the defendant and, in fact, issued a summons for his initial appearance rather than an arrest warrant.  Following the initial appearance, the defendant was released on a personal recognizance bond without any conditions.  The Government never objected to the release.  Since March of 2003, the only time the defendant has been in custody was as a result of the forensic evaluation that was conducted at the Federal Medical Center in Butner, North Carolina.  Since the BOP released the defendant in early February 2004, he has been living either at his own residence or

4

at a retirement home in Belcourt, North Dakota.  The Government has never undertaken any steps to have the defendant detained.  The Government has never sought any supervision of the defendant or sought to impose any restrictions or conditions on his release.  None of the psychological evaluations, forensic evaluations, or assessments that have been conducted to date have recommended that inpatient confinement in a federal prison facility is appropriate.  The defendant is presently 83 years old.  He has presented no substantial risk of being a danger to anyone over the past four years.  The defendant has been living on his own in Belcourt on a personal recognizance bond without any supervision since March of 2003.  At the time of the "dangerousness hearing" on June 1, 2007, the defendant has been out on unsupervised release for more than four years without incident.  At the "dangerousness hearing," the Government essentially conceded that it has not sustained the burden of proof required in this case.

There were two witnesses who testified at the "dangerousness hearing" on June 1, 2007.  Gayle LaRocque testified for the Government and Dr. Robert Gulkin testified on behalf of the defendant.  LaRocque is the manager of the retirement home in Belcourt where the defendant resides.  Dr. Gulkin is a psychologist who has conducted several psychological evaluations of the defendant.  None of these witnesses established that the defendant poses a substantial risk or a danger to any person.  To the contrary, the overwhelming evidence reveals that the defendant is old, suffers from dementia, is deteriorating in both his mental and physical condition, has limited involvement with children and only in the presence of other adults, and he does not present a "substantial risk" of injury to others.

Dr. Gulkin was the only expert witness who testified at the "dangerousness hearing."  Dr. Gulkin conducted a psychological evaluation of the defendant on May 8, 2007, and issued a written report on that date.  Dr. Gulkin's conclusions and recommendations are as follows:

5

Mr. Azure was referred to the undersigned to aid in the process of establishing his basic dangerousness to the community.  Mr. Azure has been found to show a dementing disorder and he is incapable of assisting in his own defense.  Current re-assessment suggests that there has been a moderate degree of deterioration since his last evaluation.

As with the earlier evaluation; the undersigned does not perceive Mr. Azure as a predatory pedophile. He appears to have only marginal understanding and recollection of the charges against him although it is acknowledged that his motivation to share such information would be compromised if he did remember and understand the process that he is involved in.  That issue is complex and would be difficult to establish with certainty but what does appear to be reasonably documented is the general deterioration in his overall cognitive, functions.

At this point, Mr. Azure has apparently, shown a range of, progressive physical declines.  Observation by staff at the nursing home and medical records would be helpful in documenting the more measurable aspects of his physical condition.

At this time, it is the impression of the undersigned that Mr. Azure represents a relatively limited and mild risk to the community.  His mobility is compromised and his general level of energy is diminished.  He is living in an environment which is monitored and in which there are no young people who could be victimized.  As noted, it is the impression of the undersigned that Mr. Azure does not appear to be a risk of planned and active predatory behavior.  With a dementing condition, he might be vulnerable to acting upon sexual impulses in an opportunistic manner but this will be limited by both his basic physical condition and the circumstances under which he is living.  With his placement in a staffed residential program and the ongoing supervision by family during the day when he is at home for visits, it would not appear that Mr. Azure poses a significant or even measurable risk to the community.  Assuming an ongoing pattern of supervision, it is the impression of the undersigned that there is little benefit to be gained by the costs of moving Mr. Azure to a more structured federal facility.

Based on the evidence presented at the "dangerousness hearing," and the totality of the circumstances, the Court finds that the Government has failed to sustain its burden of proof.  The Government has failed to present clear and convincing evidence that the defendant, Raymond Azure, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person.  The record clearly supports a finding that the status quo should remain and the defendant should be allowed to continue to reside at the retirement home

6

in Belcourt, North Dakota. The defendant is clearly incompetent to stand trial but the evidence <u>does</u> <u>not</u> support a finding that his release creates a substantial risk of bodily injury to another person.

Dated this 4th day of June, 2007.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court